McMILLAN, Presiding Judge.
The appellant, Curtis Wayne Smith, appeals from the trial court’s denial of his motion to suppress.
Smith pleaded guilty and was convicted of possession of marijuana in the first de *446 gree, a violation of § 13A-12-213, Ala. Code 1975, reserving the right to appeal the trial court’s denial of his motion to suppress. He was sentenced to three years’ imprisonment and was ordered to pay a $1,500 fíne, $75 as a victims assessment, $100 to the Alabama Department of Forensic Sciences, a $2,000 Drug Demand Reduction Act assessment, and court costs.
At Smith’s suppression hearing, Officer Adam Robinson,[1] of the Houston County Sheriffs Department, Narcotics Division, and a former patrol officer, testified that on July 31, 2003, while on routine patrol, he initiated a traffic stop on Smith’s vehicle on Third Avenue for “no tag light.” He contacted dispatch and determined that Smith had no outstanding warrants and also asked the trooper post to determine the Code section for the offense of “no tag light.” He testified that he did not suspect that the appellant was involved in any other criminal activity. Officer Robinson learned from another officer that Smith had been previously associated with drugs. He testified that Smith was thereafter asked to consent to a search of his vehicle and that he refused consent. Subsequently, a canine unit was called and the vehicle was searched. After the drug-sniffing dog “indicated” on the vehicle, the officers recovered the marijuana seeds. He testified that once the seeds were found, Smith indicated that he had more narcotics at his residence. At that time, a verbal search warrant was issued for Smith’s residence. The warrant was executed and marijuana was found. Smith was charged with possession of marijuana in the first degree.
Upon cross-examination by defense counsel, the following occurred:
“Q. Are you familiar with the Section 32-1-4[2] m dealing with misdemeanor arrests where it requires that once you issue a traffic citation, you are to immediately release him?
“A [Officer Robinson], No, sir.
“Q. Are you familiar with that one?
“A. No, sir.
“Q. Let me show you this one. (Witness reviewing document.) Have you ever heard of that section?
“A. No, sir.
“MS. BATES: Could I see that, Tommy?
“MR. SCARBROUGH: Yes, ma’am. “Q. So you gave him the ticket and you held him beyond the time that it took for you to issue the ticket, didn’t you?
*447 “A. No, sir. I gave him the ticket. Then we conducted our investigation, and he was arrested from the residence.
“Q. You gave him the ticket. And then you conducted the investigation?
“A. That’s correct. A search warrant was conducted at that time.
“Q. After the ticket?
“A. After the ticket.
“Q. Are you sure about that?
“A, Yes, sir.
“Q. Absolutely?
“A. Oh. Yeah.”
Thereafter, on re-cross-examination, the following transpired:
“Q. But you got that information [that he had narcotics at his residence] after you held him beyond giving him the ticket, didn’t you?
“A [Officer Robinson]. Sir?
“Q. You got that information after you issued the ticket, didn’t you?
“A. I don’t know if I issued him the ticket, then received the information; or received the information, then gave him the ticket.”
Finally, following the testimony of this witness, defense counsel argued in support of his motion to suppress, as follows:
“The [United States Court of Appeals for the] 11th Circuit says that after the ticket is given if there is no reasonable suspicion of any criminal activities, the officer must let him go. And that is what that case says. And I think it applies to the case against Mr. Smith. “There is another case, Alabama case, Peters v. State, 859 So.2d at 451 [ (2003) ]. This is a case where a trooper up in north Alabama stopped a guy on the interstate. He became suspicious, stopped him, and said he was going to give him a warning citation for the traffic offense. After he gave him a citation, then, there was a conversation about searching his vehicle. The defendant would not allow a search. The trooper said you are free to leave, but I’m going to keep your car.
“The trooper called the canine out, and they indicated on the car and found drugs. He had a suppression motion in circuit court, and it was denied. He appealed it. And the Alabama Court of Criminal Appeals reversed the denial of the suppression stating that after the traffic stop was over, the defendant was free to leave, unless the officer has some reasonable articulable suspicion of criminal activity. And that is important here, because the officer said he had no suspicion of any criminal activity at the time he stopped him, before he stopped him, or during the stop until there was some conversation about drugs, and until he called a dog out, and he says the dog alerted on the car.
“So all these cases, Judge, I think support our position that the evidence is due to be suppressed.
“And there is another case I’ll give to you. That is United States v. Purcell [236 F.3d 1274 (11th Cir.2001)]. The only reason I give that to you, Judge, is because in that case the 11th Circuit talks about what is reasonable articula-ble suspicion and what an officer can do and how long he can hold a defendant in a car at a traffic stop.
“So I’d ask that you consider these, read them, Judge, before you make a ruling. And I ask that you suppress any evidence found in the car, suppress the search warrant that resulted from the illegal search and any evidence found by the officers against the defendant.
“THE COURT: What says the State?
“MS. BATES: Judge, he did have an articulable suspicion. He had the dog indicating that there were drugs in the *448 car. And in addition to that, the testimony was actually that at the time he made the stop he had no suspicion of any crime other than the tag light. But once the stop was made, and he saw the defendant, he realized that he had information that the defendant had been in possession of drugs in the past. And at that time, and only at that time, did he call the dog. And the dog indicated. And marijuana seeds were found in the vehicle. The defendant gave the officer a statement that he had more marijuana at his home. And based on that statement, he got a search warrant, and it was there. The evidence is not due to be suppressed.
“MR. SCARBROUGH: Judge, these cases also state that the government cannot use the fact that drugs were found as their probable cause. So, therefore, their suspicion was correct. You can’t do that. These cases tell you can’t do that.
“Further, there was no reasonable artic-ulable reason stated by the officer, Judge. And they are due to be suppressed, all the evidence.
“THE COURT: Okay. I’ll look at it.”
Officer Robinson testified on direct examination that the citation was issued within 20 minutes after the stop.[3] Smith refused consent to search his vehicle; however, the canine unit was summoned and “indicated” or “sat” on the vehicle, and marijuana seeds were then found in the car. At that point, Officer Robinson stated that Smith admitted that he had narcotics in his home, so a search warrant was obtained verbally. On cross, he also testified with certainty that the narcotics investigation did not commence until after the citation was issued. It was- not until recross that the officer indicated that he was uncertain whether the citation was issued before or after Smith’s admission. In Peters v. State, 859 So.2d 451, 453-54 (Ala.Crim.App.2003), this court addressed a similar situation and quoted State v. Washington, 623 So.2d 392, 395-96 (Ala.Crim.App.1993), in finding:
“Once the traffic offender signs the UTTC [Uniform Traffic Ticket and Complaint], the arresting officer is to ‘forthwith release him from custody.’ § 32-l-4(a)[, Ala.Code 1975], The officer may further detain the driver only if he has probable cause to arrest the driver for some other non-traffic offense, see Hawkins v. State, 585 So.2d 154 (Ala. 1991), or has a reasonable suspicion of the driver’s involvement in some other criminal activity justifying further detention for investigatory purposes under Terry v. Ohio[, 392 U.S. 1 (1968) ], see United States v. Tapia, 912 F.2d 1367 (11th Cir.1990). '
‘“Reasonable suspicion is a less demanding standard than probably cause.’ Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). However, reasonable suspicion exists only if the officer has ‘specific, particularized, and articulable reasons indicating that the person [stopped] may be involved in criminal activity.’ Hickman v. State, 548 So.2d 1077, 1080 (Ala.Cr.App.1989). ‘To determine whether reasonable suspicion existed for a particular stop, the totality of the circumstances, as known to the officer at the inception of the stop, [or, in this case, at the time of the continued detention>] must be considered.’ Arnold v. State, 601 So.2d 145, 149 (Ala.Cr.App.1992) (emphasis added [in Washington ]. Ac *449 cord Lamar v. State, 578 So.2d 1382, 1385 (Ala.Cr.App.), cert, denied, 596 So.2d 659 ([Ala.]1991).”
It appears that the “reasonable suspicion” that Officer Robinson had to detain Smith was predominately that an officer had informed him that he believed that Smith had been previously associated with drugs. This was insufficient to detain Smith. See R.W. v. State, 913 So.2d 505, 510 (Ala.Crim.App.2005) (“[Reasonable suspicion is determined not by looking at each circumstance individually, but by looking at the totality of the circumstances surrounding the indictment.”). In this case, there was no “particularized and objective basis,” United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), for detaining Smith. Smith was stopped about 7:30 p.m. for “no tag light” and the officer acknowledged that he had no belief that Smith was involved in any criminal activity; the other officer’s indication that he believed that Smith had at some time in the past been involved with drugs did not supply a “particularized and objective basis” for Smith’s detention.
Moreover, Smith’s refusal to consent to the search could not have supplied the necessary “reasonable suspicion.”
“ ‘[Ijnformation obtained ... during this further detention cannot be considered in evaluating whether the trooper had reasonable suspicion to further detain the defendant in the first place.’ [State v.] Washington [623 So.2d 392] at 397 [ (Ala.Crim.App.1993) ]. A defendant’s ultimate refusal to consent to a search of the vehicle cannot be considered as a factor in the officer’s determination of reasonable suspicion. State v. Washington, supra.”
Peters v. State, 859 So.2d at 454. See also Illinois v. Caballes, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005); Arnold v. State, 601 So.2d 145, 149 (Ala.Crim.App.1992).
The only evidence presented by the State indicated that the citation was issued within approximately 20 minutes after the stop occurred at about 7:30 p.m. Smith was arrested at his home at about 9:15 p.m. The State requests that this cause be remanded because it is unclear whether the citation was issued before or after the drug-sniffing dog alerted on Smith’s vehicle. The State then, in brief, quotes the officer’s testimony originally stating that the search warrant for the house was not issued and the investigatory procedures did not occur until after the citation was issued and his later testimony, on record, that he did not know the order of the two occurrences. Because the officer has twice been asked the sequence of these events, responding firmly originally and then stating that he did not know, it seems a waste of judicial economy to ask a third time.
Based on the certainty of the officer’s original responses indicating that the citation issued before the search warrant and the drug investigation, and the timing of events established by documents in the record, it appears that Smith was unlawfully detained after he was cited for “no tag lights.” Therefore, the judgment is due to be reversed and this cause remanded, because the trial court erred in denying the motion to suppress. The judgment is reversed and the cause remanded to the Houston Circuit Court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, SHAW, and WISE, JJ., concur.
BASCHAB, J., dissents, with opinion.

. Officer Robinson was the only witness for the State, and he repeatedly testified that he did not have a clear memory of the offense, e.g., he could not remember if he wrote the ticket, whose ticket book was used, whose patrol car he was traveling in, when the stop was made, or whose canines were used.

. Section 32-1-4, Ala.Code 1975, was amended effective July 1, 2006. At' the time of the traffic stop, § 32-1-4 provided:
"(a) Whenever any person is arrested for a violation of any provisions of this title punishable as a misdemeanor, the arresting officer shall, unless otherwise provided in this section, take the name and address of such person and the license number of his motor vehicle and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice, and such person shall, if he so desire, have a right to an immediate hearing, or a hearing within 24 hours at a convenient hour and such hearing to be before a magistrate within the county or city wherfe such offense was committed. Such officer shall thereupon and upon the giving by such person of a sufficient Written bond, approved by the arresting officer, to appear at such time and place, forthwith release him from custody.
[[Image here]]
“(c) An officer violating any of the provisions of this section shall be guilty of misconduct in office and shall be subject to removal from office.”

. The citation for “no tag light” was dismissed by the district attorney before the suppression hearing.