KELLUM, Judge.
Pursuant to a negotiated plea agreement, the appellant, Joshua Logan Muse, was convicted of driving under the influence of alcohol, in violation of § 32-5A-191(a)(2), Ala.Code 1975, and of illegal possession of a prescription medication, a violation of § 34-23-7, Ala.Code 1975. The circuit court sentenced Muse to 90 days’ imprisonment for the DUI conviction and to one year’s imprisonment for the prescription-drug-possession conviction. Both sentences were suspended, and Muse was placed on two years’ supervised probation. The circuit court ordered Muse to pay all applicable mandatory fines and court costs.
Before pleading guilty, Muse reserved the following issue for appellate review: Whether the arresting officer had reasonable suspicion, first, to stop Muse and, then, to arrest Muse. Muse raised this issue in a motion to suppress before the circuit court. At a hearing on that motion, the circuit court considered the following evidence from the testimony. On July 11, 2007, Roy Dempsey, an officer with the Shelby County Sheriffs Department, was traveling south on Alabama Highway 119 at 1:10 a.m. when he observed a man, later identified as Muse, outside his vehicle on Broken Bow Drive in the Broken Bow subdivision. Muse was parked near a house in the subdivision. Officer Dempsey testified that Muse was standing behind the vehicle and that the trunk of the vehicle was open. According to Officer Dempsey, Muse did not have the vehicle flashers turned on and there were no signs that he was repairing a flat tire.
Officer Dempsey testified that he drove past Muse, then turned around and pulled in behind Muse’s vehicle. At that time, Officer Dempsey was in a marked patrol vehicle and had not engaged his red and blue lights. Officer Dempsey testified that Muse then got in his vehicle without acknowledging the patrol vehicle, turned on his headlights, and drove approximately 5 to 10 feet. At that point Office Dempsey turned on his flashing lights, and Muse immediately stopped his vehicle. According to Officer Dempsey, Muse stumbled as he got out of the vehicle. After Officer Dempsey concluded that Muse had been drinking and that he was incapable of safely driving a motor vehicle, he arrested Muse for DUI.
*791 Officer Dempsey testified that he did not know if Muse’s vehicle had broken down or exactly what Muse was doing when he pulled in behind Muse’s vehicle. Officer Dempsey explained that when he pulled in behind Muse, he thought either that Muse’s vehicle had broken down or that Muse needed some assistance. Officer Dempsey testified that he then stopped Muse “to see what was going on.” Officer Dempsey testified that he did not observe any crimes and that there had been no reports of any crimes taking place at that location that night.
On cross-examination by the State, Officer Dempsey explained that there had been an ongoing problem with the unlawful breaking and entering of vehicles in the northern part of Shelby County — the part of the county where Officer Dempsey observed Muse’s parked car. Officer Dempsey testified that finding a stopped vehicle in the road with no lights on was suspicious. After pulling Muse over, Officer Dempsey determined that Muse indeed had two flat tires on his vehicle. After considering the evidence presented at the suppression hearing, the circuit court denied Muse’s motion to suppress.
On appeal, Muse contends that the motion to suppress should have been granted because, he argues, Officer Dempsey failed to establish reasonable suspicion to support the investigatory stop and subsequent search of Muse’s vehicle.
“This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute. See State v. Hill, 690 So.2d 1201, 1203 (Ala.1996); State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999).” State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App.2004). In the instant case, the facts are uncontested; the only issue is the circuit court’s application of the law to those facts. This Court affords no presumption in favor of the circuit court’s ruling.
“The United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), held that ⅛ police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.’ 392 U.S. at 22, 88 S.Ct. at 1880. The standard for allowing a Terry stop is whether there is a reasonable suspicion that ‘the person being stopped has engaged in some type of criminal activity.’ Webb v. State, 500 So.2d 1280, 1281 (Ala.Crim.App.), cert. denied, 500 So.2d 1282 (Ala.1986).”
Ex parte Carpenter, 592 So.2d 627, 629 (Ala.1991).
‘““The officer [making a Terry stop] ... must be able to articulate something more than an ‘inchoate and unparticular-ized suspicion or “hunch.” ’ [Terry, 392 U.S.] at 27. The Fourth Amendment requires ‘some minimal level of objective justification’ for making the stop. INS v. Delgado, 466 U.S. 210, 217 (1984). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means ‘a fair probability that contraband or evidence of a crime will be found,’ [Illinois v. Gates, 462 U.S. 213, 238 (1983),] and the level of suspicion required for a Terry stop is obviously less demanding than for probable cause.” ’ ”
State v. White, 854 So.2d 636, 640 (Ala.Crim.App.2003), quoting Alabama v. White, 496 U.S. 325, 329-30, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), quoting in turn United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).
“In reviewing reasonable suspicion determinations, courts must look at the *792 ‘ “totality of the circumstances” ’ to see whether the detaining officer had a ‘ “particularized and objective basis” ’ for suspecting wrongdoing. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). ‘This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that “might well elude an untrained person.” ’ Arvizu, 534 U.S. at 273, 122 S.Ct. 744 (quoting Cortez, 449 U.S. at 418, 101 S.Ct. 690).”
State v. Odom, 872 So.2d 887, 890 (Ala.Crim.App.2003).
In United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), the United States Supreme Court explained:
“Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like ‘articulable reasons’ and ‘founded suspicion’ are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances— the whole picture — must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. See, e.g., Brown v. Texas, [443 U.S. 47, 51 (1979) ]; United States v. Brignoni-Ponce, [422 U.S. 873, 884 (1975) ].”
449 U.S. at 417-18, 101 S.Ct. 690 (emphasis added).
In the instant case, Officer Dempsey observed Muse’s vehicle stopped on the side of a road in the front of a house in a subdivision at 1:10 a.m. Officer Dempsey, who was driving a marked police vehicle at the time, passed Muse’s vehicle, turned around, and then pulled in behind Muse’s vehicle. He believed either that Muse’s vehicle had broken down or, more generally, that Muse needed some assistance. At the time Officer Dempsey pulled in behind Muse’s vehicle, he believed that he was acting to help a stranded motorist. See, e.g., Doucette v. State, 10 So.3d 117 (Ala.Crim.App.2008), cert. denied, 10 So.3d 126 (Ala.2008) (recognizing that the mere approach and questioning of a person seated in a parked vehicle do not constitute a seizure within the meaning of the Fourth Amendment).
However, after Officer Dempsey pulled in behind Muse’s vehicle, Muse, who was standing behind his vehicle with the trunk open, got into his vehicle and drove away without acknowledging Officer Dempsey. Officer Dempsey subsequently turned on his flashing lights to initiate a traffic stop. At the time Officer Dempsey pursued Muse, he knew that there had been ongoing problems with the unlawful breaking and entering of vehicles in the area. Muse’s decision to drive away after Officer Dempsey pulled over to assist him — Officer Dempsey believed he was a stranded motorist — raised a reasonable suspicion that Muse was engaged in criminal conduct.
Given the totality of the circumstances, Officer Dempsey was able to articulate a sufficiently particularized basis for a suspicion to justify investigating Muse. United States v. Cortez, supra. Based on the foregoing, the circuit court’s judgment is affirmed.
AFFIRMED.
WISE, P.J., and WINDOM and MAIN, JJ., concur.
WELCH, J., dissents, with opinion.